UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ELIZABETH D. PORTER,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civil Action No. 04-2121 (PLF)
                                        )
LISA P. JACKSON,                        )
  Administrator, Environmental Protection Agency,  )
                                        )
            Defendant.[1]               )
_____)


OPINION

       This matter is before the Court on defendant's motion for summary judgment.

Plaintiff was formerly employed at the Environmental Protection Agency.  She brought this

action alleging that EPA discriminated against her on the basis of her disability and her sex, and

retaliated against her for pursuing past claims of discrimination, in violation of the Rehabilitation

Act, 29 U.S.C. §§ 791 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.*  After careful consideration of the parties' papers, the relevant case law and statutes, and

the entire record in this case, the Court will grant defendant's motion. [2]

_____

    [1]     The Court has substituted EPA Administrator Lisa Jackson as the defendant for former Administrator Michael O. Leavitt pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

    [2]     The following papers are relevant to this motion: the First Amended Complaint ("Compl."); Defendant's Motion for Summary Judgment ("Mot."); Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp."); Defendant's Reply in Support of Motion for Summary Judgment ("Reply"); and Plaintiff's Sur-Reply to Defendant's Reply in Support of Motion for Summary Judgment ("Sur-Reply"), as well as the numerous exhibits attached to the parties' briefs.

## I.  BACKGROUND

Plaintiff Elizabeth Porter worked at EPA from 1991 until 2001.  <u>See</u> Compl. ¶ 11. While at EPA, plaintiff worked as a GS-14 Environmental Protection Specialist in the Office of Policy, Planning and Evaluation, later reorganized as the Office of Environmental Information. Plaintiff has a migraine condition that affected her as often as daily while she was working at EPA.  <u>See</u> Opp., Ex. 14, Affidavit of Elizabeth D. Porter ("Porter Aff.") ¶ 10.

Plaintiff alleges that EPA took various adverse employment actions because of her migraine disorder and her sex.  The relevant facts are described below.

### A.  Delay in Processing Plaintiff's CRADA Application

In 1993, plaintiff developed a mapping software program that was later named "ECOVIEW."  She desired to collaborate on its development with private firms pursuant to a Cooperative Research and Development Agreement ("CRADA").  <u>See</u> Compl. ¶¶ 168-70.  A CRADA is an agreement between a federal laboratory and a non-federal party under which the parties jointly provide resources toward a specific research or development project.  <u>See</u> 15 U.S.C. § 3710a(d)(1).  Plaintiff submitted a formal application for a CRADA to the Technology Transfer Office of EPA in January 1994.  <u>See</u> Compl. ¶ 46.  EPA did not approve the CRADA until June 27, 1997 — more than three years after plaintiff submitted her formal application.  <u>See</u> Mot., Defendant's Statement of Material Fact not in Genuine Dispute ("Def. Facts") ¶ 5.

On or about April 20, 1997, three years after plaintiff submitted her CRADA application, but before EPA approved the CRADA, plaintiff initiated contact with an EEO Counselor.  <u>See</u> Opp., Ex. 20 at 3.  On July 9, 1997, plaintiff filed a formal EEO complaint

alleging sex and disability discrimination with regard to the processing of her CRADA.  <u>See</u>

Opp. Ex. 1 at 4.  On October 31, 1997, after plaintiff's CRADA had been approved, EPA's

Office of Civil Rights dismissed plaintiff's complaint as moot.  <u>See</u> Opp., Ex. 2 at 1.  Plaintiff

appealed to the EEOC, but was unsuccessful.

### B.  Plaintiff's Alleged Disability and Requested Accommodation

Plaintiff alleges that in 1993 she requested to work from her home in Annandale,

Virginia on a part-time basis because of her migraines, a request her employer granted.  <u>See</u>

Compl. ¶ 28.  Beginning in 1995, plaintiff's then supervisor, Arthur Koines, permitted her to

continue to work from home part-time under a "Pilot Flexible Workplace Project."  <u>See</u> Def.

Facts ¶ 2; Opp., Plaintiff's Statement of Material Facts as to Which There is a Genuine Dispute

("Pl. Facts") ¶ 2.  Mr. Koines later permitted plaintiff to work from home full time.  <u>See</u> Opp.,

Ex.16, Deposition of Arthur Koines at 59.  In July 1999, Brendan Doyle became plaintiff's new

supervisor and permitted her to continue working from home full-time pursuant to an alternate

workspace agreement.  <u>See</u> Def. Facts ¶ 6; Pl. Facts ¶ 6.

Plaintiff believes that her health continued to deteriorate during this time.  <u>See</u>

Porter Aff. ¶ 9.  Based on suggestions provided by her physicians that the air quality and

environmental triggers in and around the District of Columbia were possible contributors to her

migraines, plaintiff began to consider moving from the District of Columbia metropolitan area.

<u>See id</u>. ¶¶ 12-14.  In August 1999 plaintiff discussed her interest in moving to North Carolina

with her prospective supervisor, Barry Nussbaum.  <u>See</u> Porter Aff. ¶ 19.  Although Mr.

Nussbaum was initially supportive of the idea, after further discussion, plaintiff's second line

supervisor, Reginald Cheatham, disapproved the request in March 2000.  See Def. Facts

¶¶ 10-11, 14; Pl. Facts, Additional Material Facts as to Which there is a Genuine Dispute ("Pl.

Add. Facts") ¶ 1(d).  Plaintiff and her family had begun planning the move and continued with it

despite Mr. Cheatham's denial of permission.  See Pl. Add. Facts ¶ 1.  On July 8, 2000, at the

request of EPA, and based on medical documents submitted by plaintiff, Dr. Christopher Holland

issued a letter to EPA stating that plaintiff had a disability that affected her major life activities

and recommending that EPA provide certain accommodations to plaintiff.  See Mot., Ex. 14

("Holland Letter") at 5-6.  On July 12, 2000, Mr. Cheatham denied plaintiff's request to work

from home full-time in Wilmington, North Carolina.  See Def. Facts ¶ 18.

Plaintiff did not return to work, and on November 15, 2000 the agency sent her a

letter stating that she was considered absent without leave.  See Def. Facts ¶ 19.  On January 29,

2001, Mr. Cheatham issued a proposed notice of removal.  See id. ¶ 20.  On May 10, 2001, EPA

notified Plaintiff of its decision to terminate her employment effective May 26, 2001.  See Def.

Facts ¶ 21.  After plaintiff received the notice of termination, but before its effective date, she

found another job with the Army Corps of Engineers, but the Corps would not hire her if she

were in fact removed from federal service.  See id. ¶ 21.[3]  At plaintiff's request, EPA changed the

effective date of termination to June 27, 2001 to allow plaintiff to be hired by the Army Corps of

Engineers.  See id. ¶ 22. As a result, plaintiff's personnel record shows that she transferred from

EPA to the Department of Defense.  See id.

---

[3]      Defendant's Statement of Material Fact Not in Genuine Dispute contains two
paragraphs numbered 21; this reference is to the second paragraph.

## II.  STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  She is required to provide evidence that would permit a reasonable jury to find in her favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### III.  DISCUSSION

Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Section 501 of the Rehabilitation Act, 28 U.S.C. § 791, is the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination.  See Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003); see also Bonieskie v. Mukasey, 540 F. Supp. 2d 190, 195 (D.D.C. 2008).  Both Title VII and the Rehabilitation Act also prohibit federal agencies from retaliating against employees for asserting their rights.  See Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008); Holcomb v. Powell, 433 F.3d at 901.

Plaintiff alleges that defendant violated these statutes with regard to (1) EPA's delay in processing her CRADA from 1994 to 1997, (2) other discrete allegedly adverse actions taken by EPA from 1994 to 1999, and (3) her constructive suspension and subsequent termination.  Plaintiff also alleges that EPA refused to reasonably accommodate her disability when it did not grant her request to relocate to and work from home in Wilmington, North Carolina.  Finally, plaintiff alleges that she was subject to a hostile work environment at EPA. EPA moves for summary judgment on all counts.

## A. Unexhausted Claims

Apart from her discrimination claims relating to EPA's delay in processing her CRADA, plaintiff alleges that, from approximately 1994 to 1999, EPA took other actions which constituted disability and sex discrimination, and retaliation.[4]  Defendant argues that plaintiff failed to exhaust her administrative remedies with regard to each of these claims.  Federal employees must exhaust their administrative remedies before filing suit under either Title VII or the Rehabilitation Act.  See 42 U.S.C. § 2000e-16(c) (Title VII claims); 29 U.S.C. § 794a(a)(1) (applying the remedies, procedures, and rights associated with Section 2000e-16 claims to Rehabilitation Act claims).  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); see also Moore v. Schafer, 573 F. Supp. 2d 216, 219 (D.D.C. 2008); 29 C.F.R. §§ 1614.101 et seq. (exhaustion procedures).

---

[4]     Specifically, plaintiff's discrimination and retaliation claims include allegations that EPA deprived her of management opportunities; deprived her of personnel, computer, and other agency resources; reassigned her staff; removed her title and management functions from her job standards; and impeded her career advancement.  See Compl. ¶¶ 39, 58, 59, 61, 62, 123 (disability discrimination claim), 141 (gender discrimination claim), and 160 (retaliation claim).

As this Court has previously stated, the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), established that "each discrete adverse employment action individually triggers Title VII's procedural requirements," such that a plaintiff alleging more than one discrete discriminatory action "must exhaust the administrative process [with respect to each allegedly discriminatory action] regardless of any relationship that may exist between those discrete claims and any others." Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004), *amended in part on other grounds*, 400 F. Supp. 2d 257 (D.D.C. 2005) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114).[5]

Plaintiff's 1997 EEO complaint alleges *only* that EPA discriminated against her by delaying the approval of her CRADA application.  Under Morgan, plaintiff was required either to include all allegations of discrete acts of discrimination or retaliation in her original EEO complaint, or file a separate EEO complaint or complaints alleging additional discrete acts within the required number of days after the new act or acts occurred.  See National Railroad Passenger Corporation v. Morgan, 536 U.S. at 113-14.  Plaintiff did neither with respect to her non-CRADA-related allegations through 1999.  She therefore failed to exhaust her administrative remedies with respect to those allegations.  Plaintiff's arguments to the contrary rely on Park v. Howard University, 71 F.3d 904 (D.C. Cir. 1995), which this Court has explained, "no longer reflects the state of the law" after the Supreme Court's decision in Morgan.  Coleman-Adebayo,

---

[5]     A different rule applies for hostile work environment claims, for which "discriminatory acts may be used by a plaintiff in proving the claim, even if those actions occurred outside of the filing period."  Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d at 137 (citing National Railroad Passenger Corporation v. Morgan, 536 U.S. at 115-21); see also Singletary v. Dist. of Columbia, 351 F.3d 519, 526-29 (D.C. Cir. 2003) (explaining that hostile work environment claims are subject to a different limitations rule under Morgan).

326 F. Supp. 2d at 138.  Because plaintiff has not administratively exhausted these claims, they are no longer viable and cannot survive summary judgment.[6]

## B.  Plaintiff's Disability

To sustain a disability claim under the Rehabilitation Act a plaintiff must as a threshold matter establish that he or she has a disability.  See Bonieskie v. Mukasey, 540 F. Supp. 2d at 197 (quoting Lester v. Natsios, 290 F. Supp.2d. at 23-24 (D.D.C. 2003)).  As used in the Rehabilitation Act, the term "individual with a disability" means any individual who has "a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . [or has] a record of such an impairment; or . . . [is] regarded as having such an impairment."  29 U.S.C. § 705(20)(B) (referring to ADA definition); see 42 U.S.C. § 12102(2) (ADA definition of disabled individual).[7]

Plaintiff states that she has neurological and immune disorders known as Multiple Chemical Sensitivities and an intractable migraine condition which, she asserts, constitute a disability within the meaning of the Act.  See Compl. ¶ 15; Porter Aff. ¶¶ 9-10.  At least one court in this district has found that a recurring migraine disorder which substantially limits a

---

[6]       Exhaustion is a jurisdictional requirement for Rehabilitation Act claims.  See Moore v. Schafer, 573 F. Supp. 2d at 219 (citing Spinelli v. Gross, 446 F.3d 159, 162 (D.C. Cir. 2006)).  Accordingly, to the extent plaintiff's claims discussed above are brought under the Rehabilitation Act, they will be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Exhaustion is not a jurisdictional requirement for Title VII claims.  See Pearsall v. Holder, 610 F. Supp. 2d 87, 95 (D.D.C. 2009).  Accordingly, judgment will be granted for defendant on plaintiff's claims discussed above which are brought under Title VII.

[7]       When analyzing an employment discrimination claim under the Rehabilitation Act, courts apply the definitions and standards of the Americans with Disabilities Act.  See 29 U.S.C. § 791(g); Bonieskie v. Mukasey, 540 F. Supp. 2d at 196 (citing Woodruff v. Peters, 482 F.3d 521, 526 (D.C. Cir. 2007); Taylor v. Rice, 451 F.3d 898, 905 (D.C. Cir. 2006)).

major life activity could be a disability within the meaning of the ADA.  See Norden v. Samper,

503 F. Supp. 2d 130, 151 (D.D.C. 2007) (acknowledging that plaintiff's major life activities were

impaired by frequent and debilitating migraine headaches).  Although EPA does not expressly

concede the issue, throughout its briefing it assumes that plaintiff is disabled within the meaning

of the Rehabilitation Act.  The Court will do the same.  It need not resolve the question of

whether plaintiff is disabled, however, because it finds that granting summary judgment for the

defendant is appropriate on other grounds with respect to all of plaintiff's claims.

### C.  Delay in Processing the CRADA

Plaintiff claims that EPA violated the Rehabilitation Act and Title VII by

discriminating against her on the basis of her disability and sex by intentionally refusing to act on

her request for a CRADA until 1997.[8]  The analysis for both Title VII and Rehabilitation Act

claims such as this begins with the McDonnell Douglas burden-shifting framework.  See

Bonieskie v. Mukasey, 540 F. Supp. 2d at 196 (citing Aka v. Washington Hospital Center, 156

F.3d at 1288).  When a plaintiff cannot offer direct evidence of discrimination, she must first

establish a prima facie case of discrimination.  See Moncada v. Peters, 579 F. Supp. 2d at 53

(citing Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004)).  "Doing so

creates a rebuttable presumption of discrimination and 'triggers the employer's burden to

produce admissible evidence that, if believed, would establish that the employer's action was

motivated by a legitimate, nondiscriminatory reason.'"  Moncada v. Peters, 579 F. Supp. 2d at 53

---

[8]      Plaintiff also claimed that EPA violated the Federal Technology Transfer Act by
intentionally refusing to act on her CRADA application for over three years.  See Compl.
¶¶ 163-74.  The Court dismissed this claim for failure to state a claim on March 6, 2006.  See
Order, Dkt. No. 50 (Mar. 6, 2006).

(quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151).  If the employer can meet this

burden, then all presumptions drop away and the Court determines "'whether intentional

discrimination may be inferred from all the evidence before the trier of fact,' including any

evidence that the employer's asserted reasons are pretextual."  Moncada v. Peters, 579 F. Supp.

2d at 53 (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151).

As the United States Court of Appeals for the District of Columbia Circuit has

explained, however, "the district court need not — *and should not* — decide whether the plaintiff

actually made out a prima facie case under McDonnell Douglas" at the summary judgment stage

if the plaintiff "has suffered an adverse employment action, and [the defendant] has asserted a

legitimate, non-discriminatory reason for the decision."  Brady v. Office of the Sergeant at Arms,

520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

> Rather . . . in those circumstances, the district court must resolve
> one central question: Has the employee produced sufficient
> evidence for a reasonable jury to find that the employer's asserted
> non-discriminatory reason was not the actual reason and that the
> employer intentionally discriminated against the employee on the
> basis of [any statutorily prohibited factors]?

Id.  "While Brady directs the district court's focus to the employer's proffered non-discriminatory

reason, the Court still first must determine whether plaintiff has suffered an adverse employment

action."  Adesalu v. Copps, 606 F. Supp. 2d 97, 103 (D.D.C. 2009) (citing Brady v. Office of the

Sergeant at Arms, 520 F.3d at 494).  See also Baloch v. Kempthorne, 550 F.3d at 1196 ("Under

Title VII . . . and the Rehabilitation Act, the two essential elements of a discrimination claim are

that (i) the plaintiff *suffered an adverse employment action*  (ii) because of the plaintiff's race,

color, religion, sex, national origin, age, or disability.") (emphasis added).

11

"An 'adverse employment action' [under Title VII or the Rehabilitation Act] is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  To show that she suffered from an adverse employment action, "[a]n employee must [have] 'experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2006)).  "[N]ot everything that makes an employee unhappy is an actionable adverse action."  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).

Plaintiff argues that defendant's delay in approving her CRADA was an adverse employment action because "if the CRADA had been approved in a timely manner, it would have allowed plaintiff to enter a partnership with a private firm to commercialize the cutting-edge mapping technology" she had developed.  Opp. at 37-38.  For plaintiff to have received a financial benefit from her invention, she and the agency could have attempted to patent the [invention] and negotiated a licensing agreement for it, see 15 U.S.C. § 3710a(a)(2), or have attempted to enter into a cooperative research and development agreement with another entity, such as a private corporation, for cash payments.  See 15 U.S.C. §§ 3710a(a)(1) & (d)(1).[9] Defendant opted not to pursue a patent, see Opp. at 39, and instead pursued the CRADA. Plaintiff alleges that at the time that she applied for her CRADA she had negotiated partnership

---

[9]        The parties conflate their arguments as to the patent and the CRADA processes, but either course of action required the agency's approval.  See 15 U.S.C. § 3710a(a) (the agency "may permit" the director of a federal laboratory to enter into a CRADA or negotiate a licensing agreement).

agreements with two private firms.  See Compl. ¶ 45.  She argues that by the time defendant

acted upon her request for a CRADA, the technology had become out of date and the private

firms no longer found it worthwhile to pursue its development.  See Compl. ¶ 55.  This is her

primary theory as to how the delay caused her a financial loss and therefore was an adverse

employment action.

While it is established that the loss of a possible financial benefit associated with

a job may constitute an adverse employment action, see Russell v. Principi, 257 F.3d at 819, the

likelihood that plaintiff would have received a monetary benefit had defendant promptly acted

upon her CRADA application is completely speculative.  With regard to defendant's decision not

to pursue the patent process, and any corresponding likelihood of royalties, plaintiff has

submitted no evidence that her invention even would have been eligible for a patent or that, if it

were, it would have been the source of a profitable licensing agreement.  As for the possibility of

working with private firms pursuant to a CRADA, plaintiff asserts that she had identified

interested firms, see Compl. ¶ 36, but she provides the Court with no evidence in connection with

her summary judgment briefing to support this assertion.  Even more importantly, nowhere in

plaintiff's filings does she state that the firms agreed to provide a cash payment or other financial

benefit.  Plaintiff has given the Court no basis from which to conclude that it was even

reasonably likely that she would have received a financial benefit from her invention had

defendant processed her CRADA application more quickly.  This sort of speculative harm does

not amount to an adverse employment action.  See Stewart v. Evans, 275 F.3d 1126, 1134

(D.C.Cir. 2002) (incorporating opinion of district court) (an agency action is not "an actionable

adverse action . . . unless there is a tangible change in the duties or working conditions

13

constituting a material employment disadvantage").

Plaintiff also raises a halfhearted claim that defendant's failure to process her CRADA timely was retaliatory.  See Opp. at 43.  This claim simply does not make sense — the CRADA was approved, and thus the complained of discrimination (if any) ended very shortly *after* plaintiff initiated contact with an EEO counselor.  See Opp. at 44.[10]  The Court will grant summary judgment for defendant on plaintiff's claims that she was discriminated against in the handling of her CRADA.[11]

### D.  Alleged Failure to Accommodate

Plaintiff claims that EPA violated the Rehabilitation Act because EPA was aware of plaintiff's migraine disorder and nevertheless denied her a reasonable accommodation by refusing her request to work from Wilmington, North Carolina.  Section 501(b) of the Rehabilitation Act requires federal employers to take "affirmative action" when making "hiring, placement, and advancement" decisions regarding "individuals with disabilities."  29 U.S.C.

---

[10]   Although plaintiff suggests in her complaint that working from home beginning in 1994 was a protected activity for the purpose of a retaliation claim, see Compl. ¶ 159, the only protected activity that she develops in argument or with evidentiary support is the 1997 initiation of EEO counseling.  See Opp. at 43-45.

[11]   Plaintiff also argues that the delay in approving her CRADA hurt her professional reputation and standing.  Courts in this circuit have roundly rejected such generalized allegations of adverse employment actions.  See Patterson v. Johnson, 505 F.3d 1296, 1298 (D.C. Cir. 2007) ("purely subjective injuries, such as . . . loss of reputation, are not adverse actions") (citing Holcomb v. Powell, 433 F.3d at 902).  Plaintiff's arguments to the contrary are too speculative to save her claim.  See Nurriddin v. Goldin, 382 F. Supp. 2d 79, 94 (D.D.C. 2005) (allegation that a letter of reprimand may affect future promotions too speculative to constitute adverse employment action); Hammond v. Chao, 383 F. Supp. 2d 47, 59 (D.D.C. 2005) (suggesting that supervisor's alleged failure to complete an assessment of the employee necessary for admission into a training program, which might have led to a promotion, was too speculative to constitute an adverse action).

§ 791(b).  Among other things, this provision requires federal agencies to reasonably accommodate the disabilities of otherwise qualified employees unless doing so would cause an undue hardship to the agency.  See Bonieskie v. Mukasey, 540 F. Supp. 2d at 196 (citing Woodruff v. Peters, 482 F.3d at 526; Taylor v. Rice, 451 F.3d at 904-05; Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993)).[12]

To establish a *prima facie* case under the Rehabilitation Act for failure to accommodate, plaintiff must show: (1) that she was an individual who had a disability within the meaning of the statute; (2) that EPA had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that EPA refused to make such accommodations.  See Bonieskie v. Mukasey, 540 F. Supp. 2d at 196.  EPA argues that plaintiff cannot prove the fourth prong because it proposed a reasonable accommodation from which plaintiff could have performed the essential functions of her position.

When a qualified individual with a disability is in need of an accommodation, the individual's employer should engage in an "informal, interactive process [with the individual] . . . [to] identify precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. 1630.2(o)(3); see Stewart v. District of Columbia, Civil Action No 04-1444, 2006 WL 626921 at *5 (D.D.C. March 12, 2006) ("The appropriate accommodation is best determined through a flexible,

---

[12]     EPA does not dispute that plaintiff was "otherwise qualified" during the time periods relevant to this dispute, and so the Court will not address this issue.  See 42 U.S.C. § 12111(8) (defining "qualified individual" to mean "an individual, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

interactive process that involves both the employer and the individual with a disability.").  In this case, the record demonstrates that EPA had been working with plaintiff to accommodate her migraines for years.  Plaintiff would submit medical documentation to EPA, and EPA, in turn, would grant plaintiff's requests to work from home. This back-and-forth process began in 1993 when plaintiff's supervisor approved her request to work from home part-time.  Over time, the accommodation became more formalized and gradually expanded, first through a Pilot Flexible Workplace Project and then through an alternate workspace agreement.  At the time plaintiff requested that she be allowed to work from home in North Carolina, EPA was already permitting her to work from home full-time in Annandale, Virginia.

At this point, however, for the first time, EPA did not accede to plaintiff's proposal without further investigation.  EPA requested supplemental medical documentation from plaintiff.  See Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 674 (1st Cir. 1995) ("When an applicant requests reasonable accommodation, an employer may request documentation from an appropriate professional.").  Plaintiff turned over the documents to EPA, and EPA submitted the information to Dr. Holland for review.  Dr. Holland concluded that plaintiff's headaches were disabling and recommended various steps that EPA could take to accommodate plaintiff, including modifying the workplace and her schedule.  See Holland Letter at 5.  He did not recommend that she leave the District of Columbia metropolitan area.  Based on Dr. Holland's report, EPA denied plaintiff's request to work from North Carolina as a form of reasonable accommodation.  See Def. Facts ¶ 18.  This was a reasonable conclusion based on the facts before the agency at the time.

The court of appeals has defined a "reasonable accommodation" as one "employing a *method of accommodation* that is reasonable in the run of cases . . . ." Barth v. Gelb, 2 F.3d at 1187.  See also Edwards v. EPA, 456 F. Supp. 2d 72, 98 (D.D.C. 2006) (same). EPA argues that its proffered accommodation was reasonable because it exceeded the minimum standards of accommodation suggested by Dr. Holland, an independent physician hired by EPA to assess plaintiff's impairments.  See Mot. at 33.  Plaintiff asserts that Dr. Holland's suggested accommodation entailing adjustments to her office environment and work schedule was flawed because the suggestion was "completely unrealistic" in light of the fact that plaintiff had already been working from home and because her family had already moved to North Carolina.  See Opp. at 25, 28.  Plaintiff fails to produce any evidence that EPA's proffered accommodation, though undesirable for plaintiff, was necessary for her to perform the essential functions of her job.  On the contrary, plaintiff admits that she "would have been able to work equally as well in Wilmington as she had in Annandale."  See Opp. at 30; see also Opp. at 35 ("Plaintiff would have been able to perform her work in Wilmington on the same basis on which she had been performing her work when she worked from her home in Annandale.").  Essentially, plaintiff concedes that she could perform the essential functions of her job from within the District of Columbia metropolitan area.  Thus, plaintiff's own admissions reinforce EPA's argument that the agency has met the requirements of the Rehabilitation Act and was not required to do more.  See Bonieskie v. Mukasey, 540 F. Supp. 2d at 196.  Moreover, even though plaintiff apparently disagreed with Dr. Holland's conclusions, rather than continue the interactive process with her employer by showing EPA that his conclusions were unreasonable, plaintiff simply continued with her move to North Carolina.

Plaintiff argues that EPA violated the Rehabilitation Act because the agency failed to show why her requested accommodation — relocation to North Carolina — was unreasonable. The Court need not resolve this issue, however, because it finds that plaintiff's focus on the reasonableness of her own proposed accommodation is misplaced.  "[A]n employer is not required to provide an employee that accommodation [s]he requests or prefers; the employer need only provide some reasonable accommodation."  Aka v. Washington Hospital Center, 156 F.3d at 1305 (citations omitted); see also Lyons v. Legal Aid Society, 68 F.3d 1512, 1516 (2nd Cir. 1995) ("The accommodation obligation does not require the employer to make accommodations that are 'primarily for the [individual's] personal benefit.").  EPA offered, and plaintiff rejected, the continued accommodation of working from home anywhere in the District of Columbia metropolitan area.

The Court concludes that EPA proposed a reasonable accommodation to plaintiff and plaintiff rejected that accommodation.  EPA met its burden under the Rehabilitation Act. The Court therefore will grant EPA's motion for summary judgment with respect to plaintiff's reasonable accommodation claim.

### E.  Constructive Suspension and Termination[13]

Plaintiff claims that EPA discriminated against her on the basis of disability and sex, and retaliated against her when it constructively suspended her and terminated her.  These

---

[13]      Defendant also argues that plaintiff's constructive suspension claim was untimely, an issue the Court typically would resolve before proceeding to the merits of the claim. Determining whether that claim was timely, however, requires resolving complex issues about the correct tolling date.  Because the Court concludes that plaintiff cannot succeed on the merits of this claim, and grants judgment for defendant on that basis, the Court need not resolve the timeliness question.

claims are outgrowths of plaintiff's refusal to accept EPA's proposed accommodation and her subsequent absence from work.  Proceeding from the assumption that plaintiff was disabled at the time, and that constructive suspensions and terminations are undisputably adverse employment actions, the Court turns to defendant's asserted non-discriminatory, non-retaliatory reasons for its behavior.  See Brady v. Office of the Sergeant at Arms, 520 F.3d at 494.

EPA argues that it constructively suspended and terminated plaintiff for two reasons:  "(1) she accumulated 1040 hours of AWOL; and (2) she failed to follow management's directives to return to her duty station in Annandale, Virginia."  See Mot. at 29.  An employee's failure to report to work is a legitimate, non-discriminatory reason for suspension and subsequent termination.  In her opposition, plaintiff does not argue that EPA's proffered reasons for its termination decision were not the actual reasons.  Instead, she returns to the argument that EPA had not reasonably accommodated her by permitting her to work from North Carolina.  See Opp. at 37.  Because plaintiff has not shown — or even attempted to show — that defendant's proffered reasons for its actions were pretext, the Court will grant summary judgment for defendant on plaintiff's constructive suspension and termination claims.

## F.  Hostile Work Environment

Plaintiff asserts that she was subjected to a hostile work environment because of her sex and her disability.  See Compl. ¶¶ 147-150.  Specifically, plaintiff alleges that her supervisors: (1) mocked her health problems; (2) joked about her "moods and mental states;" (3) disclosed embarrassing details about her medical condition to other employees; (4) made comments and engaged in conduct that demonstrated stereotyped notions of women and bias against female researchers; (5) took actions that intentionally impeded plaintiff's career

advancement; and (6) took other actions and made other statements that constituted a hostile

work environment on the basis of her sex and disability.  See id. at ¶ 149.

        To make out a *prima facie* case of hostile work environment, plaintiff must show

that the alleged harassment was based on her membership in a protected class, and that her

employer knew or should have known of the harassment and failed to take any remedial action.

See, e.g., Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006).  She must also show that the

workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment."  Rattigan v. Gonzalez, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (quoting

Onacle v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998)).  To determine whether an

environment is sufficiently hostile or abusive to support a claim, a court must look at all the

circumstances with the perspective that "not all abusive behavior, even when it is motivated by

discriminatory animus, is actionable."  Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir.

1999).  The "conduct must be *extreme* to amount to a change in the terms and conditions of

employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (emphasis added).

This standard established to show a hostile work environment is designed to be "sufficiently

demanding to ensure that Title VII does not become a 'general civility code.'"  Rattigan v.

Gonzales, 503 F.Supp 2d at 78; see also Pearsall v. Holder, 610 F. Supp. 2d 87, 99 (D.D.C.

2009).

        Plaintiff's evidence of harassment, considered in the light most favorable to her,

as the Court must at this stage, does not show the harassment to be so severe and pervasive that it

altered the conditions of her employment and created an abusive working environment.  See

Rattigan v. Gonzales, 503 F.Supp 2d at 78.  She devotes only one page of her lengthy opposition brief to her hostile work environment claim and does not point to any record evidence of alleged harassment or describe the supposed severity and pervasiveness of the alleged harassment.  See Opp. at 42.  The record, however, does illuminate plaintiff's hostile work environment claim to a certain extent — in her deposition she stated that beginning in 1996 her supervisor, Mr. Koines, made comments about her migraines, which, according to plaintiff, implied that her illness was stress-related and that plaintiff was experiencing the migraines through some fault of her own. See Opp., Ex. 26 at 38-39.   She stated that other employees began making jokes about women getting headaches and that Mr. Koines laughed along with them.  See id. at 63.  Later, when plaintiff was diagnosed with a brain tumor, plaintiff alleges that Mr. Koines told her she "at least had something organically wrong with [her] now," and implied that she no longer would be associated with the "nut cases of the agency" who claimed to suffer from multiple chemical sensitivity.  See Mot., Ex. 11 at 54

While the alleged comments made by Mr. Koines, if true, appear to have been impolite, rude, and insensitive, plaintiff has not shown that she was subject to the level of severe and pervasive harassment necessary to maintain a claim for a hostile work environment under Title VII or the Rehabilitation Act.  As an initial matter, plaintiff was working from home for the majority of the time period in question.  As Judge Robertson recently stated: "I am at a loss to understand what could be so hostile as to be actionable under the Rehabilitation Act about a work environment consisting mostly of one's home."  See Robinson v. Veneman, Civil Action No. 05-0358, 2006 WL 2474148 at *3 (D.D.C. August 25, 2006).  Moreover, plaintiff does not direct the Court to evidence of how frequently these alleged comments occurred, one factor considered

in determining whether they meet the standard of a hostile work environment.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. at 116.  Nor does she show that they were "physically threatening or humiliating," as opposed to "mere offensive utterance[s]."  Id.  Based on the record evidence, the Court cannot conclude that these alleged statements "unreasonably interfere[d] with [plaintiff's] work performance."  See id.  Accordingly, the Court will grant judgment for defendant on plaintiff's hostile work environment claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion.  It will dismiss plaintiff's unexhausted claims brought under the Rehabilitation Act for lack of subject matter jurisdiction and will grant judgment for defendant on the remaining claims.  An Order consistent with this Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: November 13, 2009